UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TILE UNLIMITED, INC., both individually and as a representative of all other persons similarly situated, | )<br>)<br>) |
| Plaintiff, | ) 10 C 8031 |
| vs. | )<br>) Judge Feinerman |
| BLANKE CORPORATION, VIRGINIA TILE CORPORATION, and DAVID J. DEUTSCH, | )<br>)<br>) |
| Defendants. | )<br>) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Tile Unlimited, Inc. brought this putative class action in the Circuit Court of Cook County, Illinois, against Defendants Blanke Corp., Virginia Tile Corp., and David J. Deutsch. Blanke manufactures Uni-Mat Pro, a tile underlayment product; Virginia Tile is the Uni-Mat Pro distributor that sold the product to Tile Unlimited; and Deutsch is the Virginia Tile employee who, working from its Wood Dale, Illinois, location, was responsible for the sale. The complaint purports to state claims against all three Defendants under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 *et seq.*; against Blanke for fraud, breach of express warranty, and unjust enrichment; and against Virginia Tile for breach of implied warranty. Doc. 1-4. Defendants removed the action to this court, and Tile Unlimited has moved to remand the case back to state court.

This is Tile Unlimited's second suit arising from the same underlying facts. In the first suit, also originally filed in the Circuit Court of Cook County, Tile Unlimited sued only Blanke and Virginia Tile. Doc. 1-1. The case was removed to this court; Blanke and Virginia Tile

invoked diversity jurisdiction, maintaining that the parties were diverse—Tile Unlimited is an Illinois citizen, while Virginia Tile is a Michigan citizen and Blanke is a citizen of Delaware and Georgia—and that the amount in controversy exceeded $75,000. Doc. 1-2; *see Tile Unlimited, Inc. v. Va. Tile Co.*, No. 10 C 5903 (N.D. Ill.). Three days after removal, Tile Unlimited voluntarily dismissed the case without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i). Doc. 1-3.

Two months later, Tile Unlimited filed the instant action, which adds Deutsch as a defendant under the ICFA. Like Tile Unlimited, Deutsch is an Illinois citizen, so it is fairly clear that the first case was voluntarily dismissed and the instant case brought for the purpose of defeating diversity jurisdiction and remaining in state court. Undeterred, Defendants again removed, maintaining that Deutsch's citizenship should be ignored because he was fraudulently joined. Doc. 1.

"A plaintiff typically may choose its own forum, but it may not join a nondiverse defendant simply to destroy diversity jurisdiction." *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 763 (7th Cir. 2009). As a means of ensuring that diversity jurisdiction is not evaded in this manner, the fraudulent joinder doctrine "permits a district court considering removal to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." *Ibid*. (internal quotation marks omitted); *see Wecker v. Nat'l Enameling & Stamping Co.*, 204 U.S 176, 186 (1907) ("Federal courts should not sanction devices intended to prevent the removal to a Federal court where one has that right."). A defendant maintaining that a non-diverse defendant was fraudulently joined bears the "heavy burden" of demonstrating that, "after

resolving all issues of fact *and law* in favor of the plaintiff," there is no "reasonable possibility that the plaintiff could prevail against the non-diverse defendant." *Schur*, 577 F.3d at 764 (internal quotation marks omitted). To find that the plaintiff has no "reasonable possibility" of prevailing against a non-diverse defendant, the court need not hold "that there is *no* possibility that a state court would someday hold that individuals can be liable for the [claim] at issue," only that "it is not a reasonable possibility based on current [state] law and the facts before [the court]." *Schwartz v. State Farm Mut. Auto. Ins. Co.*, 174 F.3d 875, 878 (7th Cir. 1999) (emphasis added).

The question here, then, is whether Tile Unlimited has a "reasonable possibility" of prevailing against Deutsch under the ICFA. ICFA liability may lie against an individual employee like Deutsch. *See Garcia v. Overland Bond & Inv. Co.*, 668 N.E.2d 199, 207 (Ill. App. 1996) ("Section 10(a) of the Consumer Fraud Act states that those damaged by violations of the Act may sue 'any person' who violates the Act. Section 1(c) of the Act includes corporations and the salesmen and employees who work for these corporations within the definition of the term 'person.'"). To bring an ICFA claim, however, a plaintiff must either: (1) be a "consumer," or, (2) if a non-consumer, satisfy the "consumer nexus" test, which requires the plaintiff to "have suffered damages resulting from conduct that is either directed toward the market or otherwise implicates consumer protection concerns." *MacNeil Auto. Prods., Ltd. v. Cannon Auto. Ltd.*, 715 F. Supp. 2d 786, 792 (N.D. Ill. 2010) (citing *Athey Prods. Corp. v. Harris Bank Roselle*, 89 F.3d 430, 436-37 (7th Cir. 1996)); *see also First Comics, Inc. v. World Color Press, Inc.*, 884 F.2d 1033, 1039-40 (7th Cir. 1989); *Stepan Co. v. Winter Panel Corp.*, 948 F. Supp. 802, 805-06

(N.D. Ill. 1996). Defendants contend that because Tile Unlimited meets neither requirement, it has no reasonable possibility of prevailing on its ICFA claim in state court.

Tile Unlimited responds by asserting that it is a "consumer" under the ICFA. The ICFA defines "consumer" as "any person who purchases … merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." 815 ILCS 505/1(e). A corporation may be a "consumer" under the ICFA. A good example is *Lefebvre Intergraphics, Inc. v. Sanden Mach. Ltd.*, 946 F. Supp. 1358 (N.D. Ill. 1996), where the plaintiff, a commercial printer, was held to be a "consumer" because it had purchased a printing press from the defendant for its own use—it used the press, which at all times remained in its possession, to produce a wholly separate product—and not, as the statute says, "for resale in the ordinary course of his trade or business." *Id*. at 1368-69; *see also Skyline Int'l Dev. v. Citibank, F.S.B.*, 706 N.E.2d 942, 946 (Ill. App. 1998) ("Plaintiff, though a corporation, was a consumer of defendant's banking services when it requested the wire transfer."); *LaBella Winnetka, Inc. v. Gen. Cas. Ins. Co.*, 259 F.R.D. 143, 150 (N.D. Ill. 2009) (plaintiff business that purchased insurance from defendant qualifies as "consumer" under ICFA).

Tile Unlimited attempts to liken itself to the commercial printer in *Lefebvre*, contending that it "is not reselling … Uni-Mat Pro but is using it for its own use." Doc. 15 at 9. This description of how Tile Unlimited used Uni-Mat Pro is inaccurate and flatly at odds with the complaint. The complaint alleges that Tile Unlimited "is in the business of installing ceramic and other tile in both residential and commercial buildings within Illinois." Doc. 1-4 at ¶ 2. The complaint explains that "[t]o prevent the tiles from cracking after installation," "an underlayment is usually placed on top of the floor to make it rigid and the tiles [are] then placed on the

underlayment." *Id*. at ¶¶ 6-7. Uni-Mat Pro is a "new underlayment system" that "allegedly works by maintaining a rigid surface between the tile and the Uni-Mat Pro such that if there is any deflection or movement in the floor below, the top part of the Uni-Mat Pro will stay affixed to the tile and provide a rigid surface, while the bottom part of the Uni-Mat Pro will reportedly breakaway and move with the floor." *Id*. at ¶¶ 15, 19.

By contrast to how the *Lefebvre* plaintiff used the printing press, Tile Unlimited does not retain possession of Uni-Mat Pro and does not use it to produce wholly separate products for the market. Rather, Uni-Mat Pro is an inseparable component of the final tile product that Tile Unlimited installs at homes and businesses—as the complaint admits, "[a]fter the tile has been set in a thin-set mortar and the spaces between the tiles have been grouted, the only way to replace Uni-Mat Pro is to cut out or rip up the flooring itself." *Id*. at ¶ 48. Accordingly, Tile Unlimited is not a "consumer" under the ICFA, at least with respect to its purchase of Uni-Mat Pro. *See Ivanhoe Fin., Inc. v. Mortg. Essentials, Inc.*, 2004 WL 856591, at *2 (N.D. Ill. Apr. 21, 2004) ("Merely purchasing component parts for incorporation into a final product does not make a party a consumer."); *Pressalite Corp. v. Matsushita Elec. Corp. of Am.*, 2003 WL 1811530, at *10 (N.D. Ill. Apr. 4, 2003) ("The fact that [plaintiff] purchased component parts from [defendant] does not render it a consumer under the Act."); *Stepan*, 948 F. Supp. at 806-07 (plaintiff not a "consumer" where it "indisputably purchased the [product] for incorporation into insulating panels that were later resold for commercial and residential construction").

Because Tile Unlimited is not a "consumer," it must satisfy the "consumer nexus" test, which, as noted above, requires that Defendants have engaged in "conduct that is either directed toward the market or otherwise implicates consumer protection concerns." *MacNeil Auto.*

*Prods.*, 715 F. Supp. 2d at 792.* Tile Unlimited contends Defendants' conduct was "directed toward the market" because "Uni-Mat Pro was advertised to an entire market and represented to all of the prospective users as a superior product." Doc. 15 at 11. In support, Tile Unlimited cites *Downers Grove Volkswagen, Inc. v. Wigglesworth Imports, Inc.*, 546 N.E.2d 33 (Ill. App. 1989), which held the consumer nexus test met "where plaintiff has alleged defendant published false information about [plaintiff's] prices for services." *Id*. at 41. The pricing information in *Wigglesworth Imports* was directed to the market generally; here, by contrast, the complaint alleges only that Defendants' false representations about Uni-Mat Pro were directed to Tile Unlimited "and other tile installers," not to consumers. Doc. 1-4 at ¶ 23; *see also id*. at ¶¶ 26, 30-32. Tile Unlimited thus has not alleged that Defendants' conduct was directed toward the market. *See Harris v. JAT Trucking of Ill., Inc.*, 2009 WL 2222740, at *9 (C.D. Ill. July 24, 2009) (consumer nexus test not satisfied where the "allegedly false statements were made to Plaintiff and other employees, not to the general public"); *Conditioned Ocular Enhancement, Inc. v. Bonaventura*, 458 F. Supp. 2d 704, 711-12 (N.D. Ill. 2006).

Tile Unlimited alternatively contends that Defendants' conduct implicates consumer protection concerns because "the defective Uni-Mat Pro will reach households who have the

---

* At a hearing earlier this year, before the remand motion was briefed, Tile Unlimited suggested that the "consumer nexus" test is inapposite because it has brought consumer fraud and warranty claims, not contract claims. Tile Unlimited does not press this issue in its briefs, so the argument is forfeited. *See Judge v. Quinn*, 612 F.3d 537, 557 (7th Cir. 2010). The argument is without merit in any event for the reasons set forth in *DRL Enters., Inc. v. ePartners, Inc.*, 173 F. Supp. 2d 818, 820-21 (N.D. Ill. 2001). The case Tile Unlimited cited at the hearing, *Pappas v. Pella Corp.*, 844 N.E.2d 995 (Ill. App. 2006), involved plaintiffs who were "consumers" under the ICFA—they were individuals who bought windows from the defendant, *id*. at 997—which means the case does not speak to whether non-consumers must satisfy the "consumer nexus" test to state an ICFA claim.

product installed on their floors … affect[ing] not just the businesses at bar, but innocent homeowners as well." Doc. 15 at 11. This argument has been soundly, repeatedly, and correctly rejected:

> The Defendant's argument that the misrepresentation affected consumers because consumers ultimately used the product . . . fails. Almost every product sold by one commercial party to another will ultimately be sold to or otherwise effect [sic] a consumer. Consequently, if allegations [that the product ultimately will reach consumers] are sufficient to bring the claim within the ambit of the Act, the Act would apply to nearly all commercial transactions, a result contrary to the intent of the legislature as presently interpreted.

*Stepan*, 948 F. Supp. at 807; *see also Kingsford Fastener, Inc. v. Koki*, 2002 WL 992610, at *3 (N.D. Ill. May 15, 2002) ("[Plaintiff] fails to articulate [a consumer] nexus, … except to state that defendant's conduct not only affected plaintiff, but plaintiff's customers and any other unfortunate purchasers of the defective fastening system from Hitachi's full-line distributors, not to mention the scores of home buyers who may have been affected by the cost and delay in remedying the problems with the faulty fastening system. This amounts to the oft-given and just as often rejected argument that because consumers are ultimately affected, the claim has a consumer nexus. A consumer nexus is not established, however, simply because consumers are the ultimate users of the products at issue.") (internal quotation marks omitted); *Williams Elec. Games, Inc. v. Barry*, 2001 WL 1104619, at *10 (N.D. Ill. Sept. 18, 2001) (same).

For these reasons, Tile Unlimited has no reasonable possibility of prevailing against Deutsch under the ICFA. Tile Unlimited maintains that even if this were so, the court could deny remand under the fraudulent joinder doctrine because the grounds defeating Tile Unlimited's ICFA claim against Deutsch apply with equal force to its ICFA claims against Blanke and Virginia Tile. Tile Unlimited rests its submission on the "common defense" rule,

which posits that "where there are colorable ... defenses asserted ... by diverse and non-diverse defendants alike, the court may not find that the non-diverse parties were fraudulently joined based on its view of the merits of those claims or defenses. Instead, that is a merits determination which must be made by the state court." *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 113 (3d Cir. 1990). A sharply divided Fifth Circuit joined the Third Circuit in adopting the common defense rule, holding that "[w]hen the only proffered justification for improper joinder is that there is no reasonable basis for predicting recovery against the in-state defendant, and that showing is equally dispositive of all defendants rather than to the in-state defendants alone, the requisite showing has not been made." *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 575 (5th Cir. 2004) (en banc). The Ninth Circuit seems to have rejected the rule. *See Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1320 (9th Cir. 1998) ("We recognize that it is, perhaps, slightly peculiar to speak of [the non-diverse defendants] as sham defendants because the statute of limitations bars a claim against them, when that would seem to lead to an argument that [the diverse defendant] itself is a sham defendant because the statute of limitations has also run against it. Nevertheless, the fact is that [the plaintiff] did not state a cause of action against anyone, and his failure to state that cause of action against [the non-diverse defendants] demonstrates beyond peradventure that they were sham defendants for purposes of removal.").

The Seventh Circuit has not directly entered the fray, though in *LeBlang Motors, Ltd. v. Suburu of Am., Inc.*, 148 F.3d 680 (7th Cir. 1998), it held non-diverse defendants fraudulently joined based on a limitations defense equally applicable to the diverse defendant. *Id*. at 691-92. The fact that the Seventh Circuit did not expressly reference or reject the common defense rule led the district court in *Bova v. U.S. Bank, N.A.*, 446 F. Supp. 2d 926 (S.D. Ill. 2006), to hold that

*LeBlang Motors* "is not precedential" on the issue. *Id*. at 936 n.5. In support, *Bova* cited *Glidden v. Chromalloy Am. Corp.*, 808 F.2d 621 (7th Cir. 1986), which held that "[w]hen a court resolves a case on the merits *without discussing its jurisdiction to act*, it does not establish a precedent requiring similar treatment of other cases once the jurisdictional problem has come to light." *Id*. at 625 (emphasis added). But the *LeBlang Motors* opinion *did* discuss jurisdiction—the Seventh Circuit affirmed the district court's denial of remand, not only holding that the non-diverse defendants had been fraudulently joined, but expressly acknowledging that the statute of limitations protecting the non-diverse defendants benefitted the diverse defendant as well. *LeBlang Motors*, 148 F.3d at 684-85, 691-92. While the Seventh Circuit of course remains free to hold that *LeBlang Motors* did not intend to say what it appears to have said, district courts are not afforded that luxury. *See Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004). And if the Seventh Circuit ever has occasion to directly confront the question, it is by no means certain that the court would adopt a rule having a tenuous basis in Supreme Court precedent, *see Smallwood*, 385 F.3d at 580-81 (Jolly, J., dissenting), and whose upshot is that a plaintiff bringing a plainly meritless claim against *only* the non-diverse defendant must remain against its will in federal court, while a plaintiff bringing the same plainly meritless claim against diverse and non-diverse defendants *alike* is rewarded with a trip back to state court.

The point need not be pursued any further, for Tile Unlimited could not benefit from the common defense rule even if it applied in this Circuit. In *Boone v. Citigroup, Inc.*, 416 F.3d 382 (5th Cir. 2005), the Fifth Circuit clarified that the rule applies only in circumstances where "the showing which forecloses [the plaintiffs'] claim against the non-diverse defendants necessarily

and equally compels foreclosure of *all their claims* against *all* the diverse defendants." *Id*. at 391 (emphasis deleted and added); *see also Smallwood*, 385 F.3d at 576 (doctrine governs "*only* in that limited range of cases where the allegation of improper joinder rests *only* on a showing that there is no reasonable basis for predicting that state law would allow recovery against the in-state defendant and *that* showing is *equally* dispositive of *all* defendants.") (emphasis added); *Boyer*, 913 F.2d at 113 (doctrine applies where "the showing [that no recovery can be had against the non-diverse defendant] manifestly went to the merits of the action *as an entirety* and not to the joinder; that is to say, it indicated that the plaintiff's case was *ill founded as to all the defendants*") (emphasis deleted and added, internal quotation marks omitted). The rationale for holding that Tile Unlimited has no reasonable possibility of prevailing against Deutsch on the ICFA claim also defeats the ICFA claims against Blanke and Virginia Tile, the non-diverse defendants. But that rationale does not defeat *all* claims against those two defendants, as Tile Unlimited has common law fraud, express warranty, and unjust enrichment claims against Blanke, and an implied warranty claim against Virginia Tile, that are unaffected by the ICFA ruling. The common defense rule does not apply in these circumstances. *See Boone*, 416 F.3d at 391-92; *Slover v. Equitable Variable Life Ins. Co.*, 443 F. Supp. 2d 1272, 1283-84 (N.D. Okla. 2006) (common defense rule does not preclude finding of fraudulent joinder where "Plaintiffs' claims against the non-diverse Defendants and the [diverse] Defendants are based, at least in part, on distinct theories of recovery; indeed, Plaintiffs have asserted one claim—for negligent hiring, training, and/or supervision—solely against the [diverse] Defendants"); *Mendrop v. Shelter Mut. Ins. Co.*, 2006 WL 2246429, at *6 (N.D. Miss. Aug. 4, 2006) ("*Smallwood* is inapplicable to the facts of this case because the plaintiffs have alleged certain contractual claims

which lie only against the [diverse] defendant."); *but see McNary v. Cottrell, Inc.*, 2009 WL 5066650, at *3-4 (S.D. Ill. Dec. 17, 2009) (rejecting *Boone*, and holding that the common defense rule applies whenever diverse and non-diverse defendants share a common defense, even if other claims against the diverse defendants would survive a finding that the non-diverse defendant was fraudulently joined). Thus, because Deutsch was fraudulently joined as a defendant, his citizenship is disregarded for purposes of determining whether the parties are completely diverse.

Tile Unlimited offers two other reasons why diversity jurisdiction has not been established. First, it contends Defendants have not shown that the amount in controversy exceeds $75,000. Where, as here, a defendant "removes a suit in which the complaint lacks an *ad damnum*," the defendant "must establish a 'reasonable probability' that the amount in controversy exceeds $75,000." *Rising-Moore v. Red Roof Inns, Inc.*, 435 F.3d 813, 815 (7th Cir. 2006). Because it is "easier said than done" for a defendant to show that the jurisdictional minimum is met "when the plaintiff, the master of the complaint, does not want to be in federal court and provides little information about the value of her claims," a defendant's "good-faith estimate of the stakes is acceptable if it is plausible and supported by a preponderance of the evidence." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 510-11 (7th Cir. 2006). "The party seeking removal does not need to establish what damages the plaintiff will recover, but only how much is in controversy between the parties. This burden thus is a pleading requirement, not a demand for proof." *Blomberg v. Serv. Corp. Int'l*, __ F.3d __, 2011 WL 1405144, at *1 (7th Cir. Apr. 14, 2011) (citation and internal quotation marks omitted). "Once the proponent of federal jurisdiction has explained plausibly how the stakes exceed [the jurisdictional minimum], the case

belongs in federal court unless it is legally impossible for the plaintiff to recover that much." *Id*. at *2 (citation omitted).

The amount-in-controversy requirement is satisfied here. The complaint alleges that Tile Unlimited, as a result of customer dissatisfaction with tile installation work it performed using Uni-Mat Pro, lost all business from Kamp Builders, a home builder with whom Tile Unlimited had worked for years, and also from Portfolio Properties, a builder of custom homes at a large development. Doc. 1-4 at ¶¶ 37, 41, 44. Actual damages from the loss of those clients easily could exceed $75,000. Moreover, "although the complaint [i]s silent about punitive damages, the ICFA permits recovery of punitive damages, and [Tile Unlimited] could have amended [its] state court complaint to seek a punitive damages award." *Oshana*, 472 F.3d at 512. Because Defendants have plausibly explained how the stakes exceed $75,000, the jurisdictional minimum is satisfied unless it is legally impossible for Tile Unlimited to recover that amount. Tile Unlimited does not contend, let alone show, that a recovery exceeding $75,000 is legally impossible. *See Blomberg*, 2011 WL 1405144, at *2 (jurisdictional minimum satisfied where plaintiff seeking remand "did not attempt to demonstrate that it was legally impossible for them to recover that amount"). Indeed, after Defendants dared Tile Unlimited to disclaim seeking more than $75,000 (Doc. 12 at 12), Tile Unlimited avoided the subject altogether (Doc. 15), thus effectively conceding that more than $75,000 is at stake. *See Oshana*, 472 F.3d at 512.

Second, Tile Unlimited argues that Defendants did not properly plead diversity jurisdiction because the notice of removal at one point alleges on "information and belief" that Tile Unlimited's principal place of business is in Palos Park, Illinois. Doc. 1 at ¶ 11. But the notice of removal alleges at another point that Blanke's and Virginia Tile's notice of removal in

the first case "correctly alleged that Tile Unlimited was an Illinois corporation with its principal place of business in Illinois." *Id*. at ¶ 5. That allegation is sufficient.

In any event, the Seventh Circuit has made clear that diversity jurisdiction is not defeated simply because the party invoking jurisdiction alleges an opposing party's citizenship "on information and belief," so long as the record has other indicia of that party's citizenship. *See Med. Assur. Co., Inc. v. Hellman*, 610 F.3d 371, 376 (7th Cir. 2010). Such indicia are present here. The complaint alleges that Tile Unlimited purchased Uni-Mat Pro from a Virginia Tile location in Wood Dale, Illinois, and that Tile Unlimited "is in the business of installing ceramic and other tile in both residential and commercial buildings in Illinois." Doc. 1-4 at ¶¶ 2, 28. As with the jurisdictional amount, after Defendants dared Tile Unlimited to assert that its principal place of business is not in Illinois (Doc. 12 at 12), Tile Unlimited fell silent (Doc. 15). *See Med. Assur.*, 610 F.3d at 376 (although plaintiff alleged defendants' citizenship on information and belief, diversity jurisdiction proper where "the defendants—who are in the best position to furnish evidence of their citizenship—have declined the opportunity to challenge the factual basis of [plaintiff's] allegation"). Finally, Tile Unlimited's corporate registration with the Illinois Secretary of State locates its president and secretary in Palos Park, Illinois. *See* www.ilsos.gov/corporatellc (visited Apr. 19, 2011). Given this, it is difficult to see how Tile Unlimited's principal place of business could be anywhere but Illinois. *See Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192 (2010) ("'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities").

To summarize, because diversity jurisdiction lies over this matter, Tile Unlimited's motion to remand is denied. And because Deutsch was fraudulently joined, Tile Unlimited's claim against him is dismissed. *See Schur*, 577 F.3d at 763.

April 20, 2011

_____
United States District Judge