# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| TILE UNLIMITED, INC., individually, and as a representative of similarly-situated persons, | ) ) ) ) | |
| | ) | No. 10 C 8031 |
| Plaintiff, | ) ) | |
| v. | ) ) | Judge Thomas M. Durkin |
| BLANKE CORP.; VIRGINIA TILE, INC.; BLANKE GMBH; and INTERPLAST KUNSTSTOFFE, GMBH, | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Tile Unlimited, Inc. filed this class action, products liability lawsuit against the collective Defendants, Virginia Tile, Inc., Blanke Corp. ("Blanke USA"), Blanke GmbH ("Blanke Germany"), and Interplast Kunststoff, GmbH ("Interplast"). R. 73. Virginia Tile has filed a cross-claim against Blanke USA, Blanke Germany, and Interplast. R. 113. Blanke USA has filed a cross-claim against Virginia Tile. R. 88. In response to Tile Unlimited's amended complaint, Blanke Germany and Interplast filed motions to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), R. 228; R. 231, which are now before the Court.[1] For the reasons set forth below, Blanke Germany and Interplast's motions

---

[1] Blanke Germany has also moved for dismissal for "insufficient process" and "insufficient service of process" pursuant to Rule 12(b)(4) and 12(b)(5), R. 230, but the Court need not address these arguments.

to dismiss are granted, and they are dismissed.

## BACKGROUND

Uni-Mat Pro ("Uni-Mat") is a "tile underlayment product" that is affixed to the ground before a tile surface is installed. R. 73. The following is an advertisement for the product:





R. 73-1. According to the amended complaint, Interplast, a German corporation, manufactured Uni-Mat in Germany.[2] *Id.* ¶¶ 3-4. Interplast called the product ISO-DRAIN 3 VLIES GITTER ("Iso-Drain"), but Blanke Germany sold the product as Uni-Mat. R. 231-1 ¶ 3. The only difference between Uni-Mat and Iso-Drain is the name and the color—Blanke has an exclusive right to distribute a blue version of the product worldwide. R. 253-3 at 120:2-8. Blanke USA, which is incorporated in Delaware and has its principal place of business in Atlanta, Georgia, R. 46, forwarded purchase orders for Uni-Mat in the United States to Blanke Germany (a German corporation), who in turn purchased the product from Interplast and had it shipped directly to Blanke USA, one of its subsidiaries,[3] in Georgia. R. 230-1 ¶ 3; R. 230-4 at 76. Once the Uni-Mat reached the Blanke USA warehouse in Georgia, Blanke USA would sell the product to Virginia Tile and other distributers who would distribute the product throughout the United States. R. 73 ¶¶ 5-6.

Tile Unlimited, an Illinois corporation with its principal place of business in Illinois, R. 1 ¶ 5, claims that it purchased Uni-Mat from Virginia Tile, a Michigan corporation with its principal place of business in Michigan, *id.*, in August 2008 and installed it at a "new construction residence." R. 73 ¶¶ 29, 31. According to Tile Unlimited, the homeowners complained of certain noises emanating from the floor when they walked on the tiled area where Uni-Mat had been installed. *Id.* ¶¶ 34-35.

[2] Interplast's Managing Director, Martin Hartl, stated in his affidavit that Uni-Mat is actually manufactured in Germany by a third party, Kunex GmbH ("Kunex"). R. 253-4 ¶ 3.

[3] Blanke USA is not a direct subsidiary of Blanke Germany, as it is "100% owned by a German holding company, Blanke Holding GmbH." R. 230 n.4.

A similar situation occurred at a different "construction residence" in November 2009, *id.* ¶¶ 34-35, and in two custom homes at another "large development" by Portfolio Properties, *id.* ¶¶ 37-40.

As a result of the alleged "audible crunching sound" the product made when walked on, Tile Unlimited filed this class action product liability suit against all the entities up the chain of distribution—Virginia Tile, Blanke USA, Blanke Germany, and Interplast. R. 1; R. 73. It alleges that Uni-Mat was "defective," R. 73 ¶ 1, did not conform to the industry standards for such a product, and was not fit for the ordinary purpose for which Uni-Mat was used. *Id.* ¶ 42. Blanke Germany and Interplast seek dismissal from the case because they lack sufficient "minimum contacts" with Illinois to be required to defend itself in an Illinois court. R. 228; R. 231.[4]

## LEGAL STANDARD

The plaintiff, in this case Tile Unlimited,[5] bears the burden of demonstrating the existence of personal jurisdiction when a defendant moves to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of jurisdiction. *Purdue Res. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). An evidentiary hearing on the matter was not held, so Tile Unlimited is only

[4] Interplast and Blanke Germany originally filed their motions to dismiss for lack of jurisdiction on August 3, 2012, R. 91, and October 18, 2012, R. 117, respectively. The parties then engaged in jurisdictional discovery for the better part of 2013.

[5] Virginia Tile has also filed a response to Blanke Germany and Interplast's motions to dismiss, R. 246, because a decision on the jurisdictional issue directly affects Virginia Tile's cross-claims against Blanke Germany and Interplast.

required to make out a *prima facie* case of personal jurisdiction to defeat the motion. *Northern Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014). As with a Rule 12(b)(6) motion, the Court must "accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff" when assessing its jurisdiction. *St. John's United Church of Christ v. City of Chi.*, 502 F.3d 616, 625 (7th Cir. 2007) (quoting *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999)).

## ANALYSIS

Personal jurisdiction encompasses a court's "power to bring a person into its adjudicative process." Black's Law Dictionary 930 (9th ed. 2009). "The court's exercise of jurisdiction over the defendant must be authorized by the terms of the forum state's personal-jurisdiction statute and also must comport with the requirements of the Fourteenth Amendment's Due Process Clause." *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012); *see also* Fed. R. Civ. P. 4(k)(1)(A) (providing that service of process is effective to establish personal jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located"). Looking first to Illinois law, "[a] court may . . . exercise jurisdiction on any . . . basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2-209(c). Thus, the separate questions regarding whether jurisdiction is proper under Illinois's long-arm statute *and* the Due Process Clause merge, and jurisdiction will be appropriate provided the federal constitutional requirements are satisfied. *See*

*Citadel Group, Ltd. v. Wash. Reg'l Med. Ctr.*, 536 F.3d 757, 761 (7th Cir. 2008) (explaining that "no case has yet emerged where due process was satisfied under the federal constitution but not under the Illinois constitution").

The Due Process Clause of the Fourteenth Amendment "protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985) (quoting *Int'l Shoe Co. v. Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 319 (1945)). It follows that "[a] court may subject a defendant to judgment only when the defendant has sufficient contacts with the sovereign 'such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."'" *J. McIntyre Mach., Ltd., v. Nicastro*, ___ U.S. ___, 131 S. Ct. 2780, 2787 (2011) (Kennedy, J., plurality opinion)[6] (quoting *Int'l Shoe*, 326 U.S. at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940))). "The nature of the defendant's contacts with the forum state determines the propriety of personal jurisdiction and

_____

[6] No majority rationale emerged in *J. McIntyre Machinery*, though the plurality opinion rejects the notion that a party subjects itself to personal jurisdiction in a forum State simply by placing its goods into the stream of commerce. *See* 131 S. Ct. at 2786. In looking to the opinions from *J. McIntyre Machinery*, the Court is careful to note that "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds . . . ." *Marks v. United States*, 430 U.S. 188, 193 (1977) (internal quotation marks omitted). Accordingly, *J. McIntyre Machinery* can be looked at as maintaining the status quo of the Court's stream of commerce jurisprudence, as delineated in *Asahi v. Metal Industry Co. v. Super. Ct. of Calif. Solano Cnty.*, 480 U.S. 102 (1987). *See J. McIntyre Mach.*, 131 S. Ct. at 2792 (Breyer, J., concurring) ("[O]n the record presented here, resolving this case requires no more than adhering to our precedents . . . .").

also its scope—that is, whether jurisdiction is proper at all, and if so, whether it is general or specific to the claims made in the case." *N. Grain Mktg., LLC*, 743 F.3d at 492 (quoting *Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010)). Here, Tile Unlimited does not contend that Blanke Germany and Interplast are subject to the general jurisdiction of Illinois courts, so the Court will focus solely on the specific jurisdictional inquiry. *Cf. Goodyear Dunlop Tires Operations, S.A. v. Brown*, ___ U.S. ___, 131 S. Ct. 2846, 2851 (2011) ("A Court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." (citing *Int'l Shoe*, 326 U.S. at 317)).

The Supreme Court has explained that "[s]pecific jurisdiction . . . depends on an 'affiliatio[n] between the forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear*, 131 S. Ct. at 2851. In other words, "the defendant's *suit-related* conduct must create a *substantial connection* with the forum State" in order for a court's exercise of jurisdiction to comport with due process. *Walden v. Fiore*, ___ U.S. ___, 134 S. Ct. 1115, 1121 (2014) (emphasis added). This affiliation—i.e., "the relationship among the defendant, the forum, and the litigation," *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)— encompasses two related components. *See Walden*, 134 S. Ct. at 1121.

First, "the [defendant's] relationship [with the forum State] must arise out of contacts that 'defendant *himself*" creates with the forum state." *Id.* at 1122 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). The "minimum contacts" requirement cannot be satisfied through a plaintiff's or a third party's contacts with a forum State. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) ("[The] unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction."). Second, the Court "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden*, 134 S. Ct. at 1122. The inquiry focuses on whether the defendant has "purposely avail[ed] itself of the privilege of conducting activities with the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

In a case like this, one involving foreign corporations who placed their product into the "stream of commerce," the principal inquiry is "whether the defendant's activities manifest an intention to submit to the power of a sovereign." *J. McIntyre Mach.*, 131 S. Ct. at 2788 (Kennedy, J., plurality opinion); *see also id.* at 2789 ("The question is whether a defendant has followed a course of conduct directed at the society or economy existing within the jurisdiction of a given sovereign, so that the sovereign has the power to subject the defendant to judgment concerning that conduct."). "[P]hysical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a

relevant contact," though it is not a prerequisite. *Walden*, 134 S. Ct. at 1122 (citing *Keeton*, 465 U.S. at 773-74). Additionally, "[t]he defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant *might have predicted* that its goods will reach forum State." *J. McIntyre Mach.*, 131 S. Ct. at 2788 (Kennedy, J., plurality opinion). Only a defendant's actions will "empower a State's courts to subject him to judgment"; expectations or optimistic assumptions will not suffice. *Id.* at 2789; *see also id.* at 2793 (Breyer, J., concurring) (explaining that knowing or reasonably knowing that a distribution scheme "might" lead a product to being sold in every state is insufficient because that would "permit every State to assert jurisdiction in a products-liability suit against any domestic manufacturer who sells its products (made anywhere in the United States) to a national distributor, no matter how large or small the manufacturer, no matter how distant the forum, and no matter how few the number of items that end up in the particular forum at issue").

If a defendant's contacts with a forum State are sufficient and the plaintiff's injuries arise from those contacts, the Court must then analyze whether the exercise of personal jurisdiction is fair and reasonable—i.e., whether requiring the defendant to defend itself in Illinois offends "traditional notions of fair play and substantial justice." *See Int'l Shoe*, 326 U.S. at 316 (quoting *Milliken*, 311 U.S. at 463).

## I.    Blanke Germany

The Court first looks to whether personal jurisdiction may be properly exercised over Blanke Germany, beginning its analysis with Blanke Germany's contacts with Illinois. The following facts are undisputed:

- Blanke Germany is not licensed to sell products or services in Illinois.

- Blanke Germany does not have any offices, bank accounts, telephone listings or assets in Illinois.

- Blanke Germany does not have any directors, officers, employees, or agents who reside in Illinois.

- Blanke Germany has not consented to personal jurisdiction in any court in the United States.

- Blanke Germany does not do business directly with anyone or any entity residing in Illinois.

- Blanke USA, incorporated in Delaware and with a principal place of business in Georgia, is the sole distributer of Blanke Germany products in the United States.

R. 230-1 ¶¶ 5, 7, 8, 18, 24, 25. It is undisputed that Blanke Germany never sold Uni-Mat directly to Tile Unlimited or Virginia Tile, in Illinois or anywhere in the United States. *Id.* ¶ 3. It is also undisputed that Uni-Mat was shipped directly from Interplast in Germany to Blanke USA in Atlanta, Georgia. *Id.*

Tile Unlimited contends that Blanke Germany specifically targeted Illinois because it did not care where in the United States Uni-Mat was sold or distributed. R. 253 at 1-2 (Peter Blanke: "To me, Illinois is located in the US, and I want to sell all those products everywhere in the US." (quoting R. 230-4 at 117)); *see* R. 230-4 at 51. Tile Unlimited bolsters its argument by noting that Blanke Germany also knew its product was being sold in, and was ending up throughout, the United States and,

more specifically, in the Midwest because that is where Virginia Tile distributed the product. *See* R. 253 at 3 (citing R. 230-7 at 54-56). But this information alone is insufficient to establish the requisite minimum contacts or a purposeful availment of the benefits of doing business in Illinois. As explained in *J. McIntyre Machinery*, a defendant corporation's expectations of where its products will be sent once they have left the defendant's control, or even its knowledge of where its product is ending up, is insufficient to establish the requisite contacts. *See* 131 S. Ct. at 2788 (Kennedy, J., plurality opinion). Put another way, there is a difference between a corporation's targeting of a forum State and its indifference as to where a distributor ultimately sends it. Blanke Germany did not limit where its products would end up—e.g., it did not say the Uni-Mat could *not* be distributed or sold in Illinois, R. 230-7 at 82:12-14—but that is not the same as purposely sending Uni-Mat to Illinois or specifically targeting Illinois, which is the ultimate question for the minimum contacts analysis here. *See J. McIntyre Mach.*, 131 S. Ct. at 2793 (Breyer, J. concurring) (noting that he could not agree with the New Jersey Supreme Court's jurisdictional approach that "a producer is subject to jurisdiction for a products-liability action so long as it 'knows or reasonably should know that its products are distributed through a nationwide distribution system that *might* lead to those products being sold in any of the fifty states'" (quoting *Nicastro v. McIntyre Mach. Am., Ltd.*, 987 A.2d 575, 592 (2010)).

Tile Unlimited has provided the Court with a spreadsheet it contends reflects all the sales of Uni-Mat from Blanke USA to Virginia Tile between 2005 and 2010.

*See* R. 253-7. This information is seemingly intended to demonstrate that it was not a fortuitous occurrence for Uni-Mat to reach Illinois, and therefore, it demonstrates Blanke Germany specifically targeted Illinois. *See Walden*, 134 S. Ct. at 1123 (explaining that jurisdiction cannot be based on "random, fortuitous, or attenuated" contacts with the forum State); *see also Asahi*, 480 U.S. at 122 (Stevens, J., concurring in part and concurring in judgment) (noting that "the volume, the value, and the hazardous character" may affect the court's jurisdiction analysis). According to Tile Unlimited, Virginia Tile (located in Michigan), which distributes products in Illinois, purchased approximately $3,852,000 of the Uni-Mat product between 2005 and 2010—an amount it contends is "huge." R. 253 at 9. In contrast, Blanke Germany argues that the list "appears to account for *all* sales nationwide by [Blanke USA]" during the time period, which would include sales to other distributors that did not distribute Uni-Mat in Illinois. R. 267 at 4. Neither party has provided any type of "authentication" for the list or even a specific explanation of what each of the columns on the list represents—though a few are self-evident. *See* R. 253-7. In fact, at Joseph Linzmeyer's deposition (the former President of Blanke USA), he testified that the list was not a "standard sales report." *See* R. 230-7 at 179:15-24.

Nevertheless, the Court must take all facts and inferences in favor of Tile Unlimited in ruling on the motion. Accordingly, despite Linzmeyer's testimony that the list does not show where the product went after it was shipped to the distributor (in other words, where it ultimately came to rest), *see* R. 230-7 at 180:20-23, and the

fact that neither side has established whether the list shows all sales in the United States or just those to Virginia Tile, the parties agree that the list shows that Blanke USA made thirteen shipments *directly* to Illinois between 2005 and 2009 for a total sales amount of $16,400. R. 230-7 at 130:12-24. This is neither a large sales amount when compared to the sales of other companies previously subject to personal jurisdiction, nor a high dollar-amount percentage of the approximately $3,852,000 of product sales represented on the list, *see* R. 253-7 at 19, that was distributed throughout the United States. *Cf. Russell v. SNFA*, 987 N.E.2d 778, (Ill. 2013) (holding that jurisdiction was proper because an agent for the defendant made three trips to Illinois and "the record contain[ed] hundreds of invoices listing Rockford, Illinois, . . . representing multiple shipments of defendant's products that totaled approximately $1 million"). This case is therefore distinguishable on its face from *uBID, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421 (7th Cir. 2010), where the Seventh Circuit noted the gravity of the defendant's revenue derived from Illinois in determining the defendant had "sufficient minimum contacts." *See id.* at 428-29 ("GoDaddy is aware that it earns many millions of dollars annually from Illinois customers, and it cannot be unhappy to have had such success in the state. Its contacts cannot be fairly described as random, fortuitous, or attenuated.").

Illinois is one of this country's most populous states, so it is highly-probable that more than the amount of Uni-Mat shipped directly from Blanke USA to a distributor in Illinois actually reached Illinois during that time period. Nevertheless, another list provided to the Court shows the total number of Uni-Mat

sales from Virginia Tile to Tile Unlimited as being less than fifteen between 2008 and 2009, and totaling roughly $5,000, *see* R. 246-6 at 2, making this case more akin to *J. McIntyre Machinery* where only four machines ultimately ended up in the forum State. *See* 131 S. Ct. at 2780. The number of transactions with Illinois as a result of the overall distribution scheme—and the dollar amounts derived from it— does not demonstrate Blanke Germany "purposefully availed itself of the Illinois market for its services through its deliberate and continuous exploitation of that market." *Cf. uBid, Inc.*, 623 F.3d at 429.

Tile Unlimited points out that Peter Blanke, Blanke Germany's CEO, has in the past met Tom Kotel, the president of Mid-America Tile (a Chicago, Illinois distributor of Blanke products). *See* R. 230-4 at 51:19-25. Tile Unlimited says that this indicates that Peter Blanke likely knew Blanke Germany's products were being distributed in Illinois. However, Peter Blanke testified that he has met Tom Kotel less than ten times over the course of over ten years, that he could not recall if he ever met Tom Kotel at the one trade show in Illinois, and that he "did not know quite for sure" whether Mid-America Tile even distributed Blanke Germany products. *Id.* at 51:22-52:25. Corporate executives of companies involved in the same field often encounter each other at various events, but a chance meeting or encounter from time to time does not by itself establish a business relationship between their companies. Nor do such meetings necessarily demonstrate a concerted effort by a company to service customers in a given forum State. These infrequent encounters, coupled with Tile Unlimited's failure to connect them to any

business relationship between Blanke Germany and Mid-America Tile (or even the Uni-Mat product at issue here) do not demonstrate Blanke Germany explicitly sought to service the Illinois market.

Moving to other relevant facts regarding the minimum contacts analysis, there is no dispute this Court has jurisdiction over Blanke USA.[7] Peter Blanke testified that Blanke Germany does not "have anything to do with the way Blanke [USA] sells its products in the USA." R. 230-4 at 106:3-5. Tile Unlimited disputes that contention, implying that Blanke Germany has a hand in Blanke USA's business affairs because Blanke USA does not pay to use the "Blanke" name or logo, R. 230-4 at 20:19-21; Blanke USA has a link on Blanke Germany's website (which it does not pay for), *id.* at 21:5-9; and Blanke Germany coordinated and paid for the advertising and marketing of Uni-Mat for Blanke USA, *Id.* at 39:4-40:4, 48:9-23. Although this information is somewhat at odds with Peter Blanke's broad-sweeping statement that Blanke Germany does not influence how Blanke USA sells products like Uni-Mat in the United States, none of those facts demonstrates any type of focused contact that Blanke Germany has with Illinois. Nor does the fact Blanke

---

[7] Tile Unlimited sets forth an argument that seems to suggest that Blanke USA and Blanke Germany are basically the same company, and thus, because all parties acknowledge that jurisdiction over Blanke USA is proper, jurisdiction should also attach to Blanke Germany. R. 253 at 2; *see Daimler AG*, 134 S. Ct. 746, 759 (2014) (explaining that some federal appellate courts "have held, that a subsidiary's jurisdictional contacts can be imputed to its parent only when the former is so dominated by the latter as to be its alter ego"). This argument is unavailing because no evidence has been put forth demonstrating that Blanke USA is a sham corporation or that it was created solely to avoid jurisdiction. *Cf. Google Inc. v. Rockstar Consortium U.S. LP*, No. C 13-5933 CW, 2014 WL 1571807, at *14 (N.D. Cal. Apr. 17, 2014).

Germany's products comply with United States regulations demonstrate a deliberate attempt to serve the Illinois market. *See J. McIntyre Mach.*, 131 S. Ct. 2792 (Breyer, J. concurring) (noting that "special *state*-related design" might demonstrate purposeful availment) (emphasis added).

For example, whether Blanke USA pays to use the general Blanke logo has no bearing on Blanke Germany's alleged activities towards Illinois. Moreover, Blanke Germany may have paid for Blanke Germany's advertising, but a general advertising campaign that covers the United States as a whole ordinarily does not satisfy the minimum contacts requirement. There must be something focused about that advertising campaign that links Blanke Germany directly to Illinois. *See Asahi*, 480 U.S. at 111-12 (O'Connor, J., opinion); *see also uBID, Inc.*, 623 F.3d at 425 (explaining that a "national marketing campaign" may be sufficient if the defendant "purposefully directed its business activities toward [the forum State] just as it had toward all other states" (citing *Keeton v. Hustler Magazine*, 465 U.S. 465, 474 (1984))). Tile Unlimited and Virginia Tile have not put forth any evidence supporting that assertion; this, despite almost a year of discovery on the issue of personal jurisdiction.

With respect to the evidence presented regarding Blanke Germany's website—its design and the fact that Blanke Germany's website had a link to Blanke USA's website—the Seventh Circuit recently rejected a contention that a website alone, even one that is "interactive" in the forum State, can satisfy the requirement for "adequate in-state contacts." *Advanced Tactical Ordnance Sys.,*

*LLC v. Real Action Paintball, Inc.*, ___ F.3d ___, 2014 WL 1849269, at *6 (7th Cir. May 9, 2014). The Seventh Circuit explained, "Having an 'interactive website' (which hardly rules out anything in 2014) should not open a defendant up to personal jurisdiction in every spot on the planet where that interactive website is accessible." *Id.* No evidence has been put forth establishing that Blanke Germany's website is "interactive," that Blanke Germany has used the website to contact people in Illinois, or that anyone in Illinois has even accessed or visited the website. Accordingly, Tile Unlimited's reliance on the website evidence does not support its contention regarding purposeful availment of doing business in Illinois. *See be2LLC v. Ivanov*, 642 F.3d 555, 559 (7th Cir. 2011) (explaining that "a defendant must in some way *target* the forum state's market" through the interactive website and noting that evidence of twenty Illinois residents using the website was too attenuated to give rise to personal jurisdiction) (emphasis in original).

Similarly, Tile Unlimited's argument that *Virginia Tile's* website lists two Illinois showrooms and warehouses, and has "Blanke Corporation" as a manufacturer whose products it distributes in "Illinois," *see* R. 253 at 8, is irrelevant for two reasons. First, a third party's activities—here, Virginia Tile's—are not considered when assessing whether a particular defendant's contacts are sufficient. *See Walden*, 134 S. Ct. at 1122; *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 417. No evidence has been put forth that Blanke Germany had any role in the content provided on Virginia Tile's website—in fact, *Blanke Germany* was not even listed on the website, which weakens the argument further. *See Burger King Corp.*,

471 U.S. at 475 (explaining that the defendant *himself* must create the contact with the forum state). Second, Tile Unlimited provided Virginia Tile's website information from January 15, 2014, the date counsel "last visited" the website. *See* R. 253 at n.3. Whatever information was on the website in 2014 has no bearing on Blanke Germany's contacts with Illinois in 2008 when Tile Unlimited allegedly purchased Uni-Mat from Virginia Tile and when the product was installed. *See Robinson v. Automa, S.p.A.*, No. 2:13-cv-02305-GMN-PAL, 2014 WL _____, 2014 U.S. Dist. LEXIS, at *32 (D. Nev. Apr. 17, 2014) (holding that post-incident conduct does not establish the purposeful availment necessary to exercise personal jurisdiction).

If that was the totality of Blanke Germany's contacts with Illinois, the minimum contacts requirement would not be satisfied under any of the minimum contacts standards. *See e.g.*, *J. McIntyre Mach.*, 131 S. Ct. at 2780; *Asahi*, 480 U.S. at 102. However, one additional and significant fact exists: Peter Blanke, Blanke Germany's CEO, attended various trade shows throughout the United States "every year" through 2010, including a single "Coverings" trade show in Chicago, Illinois in 2007.[8] R. 253 at 3 (citing R. 230-4 at 52-53, 62-63). This is significant because a physical presence in the forum State may satisfy the requisite contacts for jurisdiction, especially when a representative of the foreign corporation is directing marketing efforts at the forum State. *See Asahi*, 480 U.S. at 111-12 (O'Connor, J.,

---

[8] The "Coverings" website promotes the yearly conference as the "largest tile, stone, and machinery purchasing event in the Americas." *Coverings*, http://www.coverings.com/ (last visited June 3, 2014).

opinion) (explaining that "something more" is required than simply placing a product into the stream of commerce—e.g., "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State"); *cf. Renner v. Roundo AB*, No. 1:08-cv-209 SJM, 2010 WL 3906242, at *10 (W.D. Pa. Sept. 29, 2010) ("Roundo itself has never advertised its products within the commonwealth and it denies having participated in any trade shows aimed at selling products to a multi-state market that included Pennsylvania . . . . While its own representatives travel to the United States on average once per year to provide technical support, they have never traveled to Pennsylvania.").

Peter Blanke attempted to minimize the significance of his single personal appearance in Illinois, testifying that his presence at the trade show was on behalf of Blanke USA, not Blanke Germany, R. 230-4 at 53; and Joseph Linzmeyer, then-President of Blanke USA, was always present and would answer questions at the booth whenever Peter Blanke, for various reasons, could not, *id.* at 63. That distinction is meaningless in terms of Blanke Germany's contacts with Illinois, however. The booth at the Chicago show had "Blanke products," R. 230-4 at 63:3-5, 65:3-6, and Blanke Germany has not presented anything indicating that Blanke Germany products were not included under the umbrella of "Blanke products" marketed at the trade show. Rather, (1) Blanke USA is Blanke Germany's sole U.S. customer, R. 230-4 at 8; (2) Blanke USA was created for the sole purpose of allowing

Blanke Germany products to be distributed throughout the United States, R. 230-4 at 11; and (3) 95% of the products Blanke USA sells are Blanke Germany products, R. 230-7 at 25:2-3. Thus, the overwhelming inference is the products at the show were in fact Blanke Germany products. Accordingly, despite the fact that the booth at the trade show may have been for "Blanke Corporation"—i.e., Blanke USA—R. 230-4 at 53, the booth might as well have been for Blanke Germany and its products. *Cf. SDS Korea Co. v. SDS USA, Inc.*, 732 F. Supp. 2d 1062, 1079-80 (S.D. Cal. 2010) (explaining that the minimum contacts prong was not satisfied, even though the defendant's products were at a trade show in the forum State, because the products were displayed at an unrelated distributor's booth and there was no evidence that the defendant had any relationship or interaction with potential customers in the forum State at the trade show).

This is not a situation in which Peter Blanke, CEO of both Blanke Germany and Blanke USA, R. 230-4 at 12-14, can be said to have adopted his "Blanke USA" affiliation and left his "Blanke Germany" affiliation behind. Peter Blanke was at the booth in Chicago, answering questions about Blanke Germany products, and ultimately promoting and endorsing the sale of Blanke Germany products *while present in Illinois. Cf. Kingsmill v. Roundo AB*, No. 12-3524, 2013 WL 3778351, at *8 (E.D. Pa. July 18, 2013) (holding that the defendant's "regular attendance at trade shows for national and international markets and infrequent attendance at meetings for [a customer's] nation-wide network of local distributors" did not satisfy the minimum contacts requirement because "[p]laintiff has provided no evidence

indicating how [defendant's] attendance at these trade shows and meetings [was] related to [the Forum state]"). Blanke Germany obviously knew its products were being marketed, promoted, and sold in Illinois because its CEO had a personal opportunity to observe the activity and further help with its facilitation. *Cf. Alphagen Biotech v. Langoost Enters., LLC*, No. 2:13-CV-15 TS, 2013 WL 2389792, at *7 (D. Utah May 30, 2013) (holding that the defendant lacked sufficient contacts with the forum State because there was no evidence the defendant knew where the product would be sold). At least one other district court has found this of type of participation at a trade show as being sufficient to satisfy the minimum contacts requirement. *See Holizna v. Boston Sci. Corp*, No. 2:12:-cv-06173, 2013 WL 1411656, at *6 (S.D.W.V. Apr. 8, 2013).

Based on Peter Blanke's attendance at the Illinois trade show in 2007, the Court is convinced that Blanke Germany has purposely availed itself of the benefits of conducting business in Illinois. *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957) (finding that a single act can support jurisdiction in the forum as long as it creates a "substantial connection with that State"). Blanke Germany did not simply put a product into the stream of commerce through an international distribution scheme that happened to reach Illinois through some random, accidental, or fortuitous event. This conclusion is strengthened by the fact that Peter Blanke has stopped attending trade shows in the United States since this lawsuit was initiated in 2010 which arguably demonstrates an attempt to remedy past conduct that may subject Blanke Germany to future jurisdiction in other states. Additionally, the

Court is careful to note that Blanke Germany's contacts with Illinois, in light of Peter Blanke's activities, satisfy the minimum contacts standard regardless of which standard is applied, including those elucidated by Justices Kennedy and Breyer in *J. McIntyre Machinery* and by Justices O'Connor and Brennan in *Asahi*. *See e.g.*, *J. McIntyre Mach.*, 131 S. Ct. at 2780; *Asahi*, 480 U.S. at 102.

But this is not the end of the inquiry. The Court must determine whether the defendant's contacts with the forum state provide the basis for the suit. *See Helicopteros Nacionales de Colombia,* 466 U.S. at 414 (explaining that the foundation of personal jurisdiction is that the "controversy is related to or 'arises out of' a defendant's contacts with the forum"); *uBID, Inc.*, 623 F.3d at 425 (noting that "[m]ore limited contacts may subject the defendant only to specific personal jurisdiction, in which case the plaintiff must show that its claims against the defendant arise out of the defendant's constitutionally sufficient contacts with the state"). Because Peter Blanke's attendance and participation at the Illinois trade show is the basis for Blanke Germany's sufficient contacts with Illinois, Tile Unlimited must demonstrate the harm alleged in the complaint arose out of that contact.

In November 2012, Tile Unlimited was given the ability to seek discovery on the jurisdictional issue before the Court. *See, e.g.*, R. 143. Tile Unlimited pursued that discovery well into the latter half of 2013, taking the depositions of defendant corporate officers located in Germany, and requesting and providing the Court with documents from a separate 2006 state court lawsuit in Colorado brought against

Blanke USA, Cartwright Distributing, Inc., and Interplast. Notwithstanding this opportunity, Tile Unlimited has failed to put forth any facts demonstrating that the harm it complains of arose out of Blanke Germany's contacts with Illinois at the 2007 trade show. For example, Tile Unlimited has not provided anything establishing Uni-Mat, as opposed to Blanke Germany products *generally*, was marketed, advertised, or promoted at the trade show. No evidence was presented demonstrating that Uni-Mat accounted for a high percentage of either Blanke Germany or Blanke USA's sales. There is also no evidence indicating that Uni-Mat was ever specifically mentioned or sold during the trade show, or that any future agreement to buy or sell Uni-Mat was reached with any consumer—distributor or otherwise—at the trade show. If there was evidence to support that information, Tile Unlimited was in a position to ascertain it during discovery. It did not. Therefore, Tile Unlimited cannot demonstrate that the alleged injuries inflicted by Blanke Germany's product (i.e., Uni-Mat), which was manufactured and distributed by separate entities residing in the United States and abroad, arose out of Blanke Germany's contacts with Illinois. *See Holizna*, 2013 WL 1411656, at *6; *see also uBID, Inc.*, 623 F.3d at 425. The Court may not exercise personal jurisdiction over Blanke Germany.

## II.    Interplast

The Court must next consider whether personal jurisdiction may be properly exercised over Interplast, again beginning its analysis by looking at Interplast's contacts with Illinois. The following facts are undisputed:

- Interplast is not incorporated or licensed to do business in Illinois.

- Interplast has not and does no maintain any office, facility, mailing address, or telephone listing in Illinois.

- Interplast has not employed and does not employ any officers, employees, or agents in Illinois.

- Interplast has not consented and does not consent to be sued in the state or federal courts of Illinois.

R. 231-1 ¶¶ 10, 12, 17, 21. As more pertinent here, it is undisputed that Interplast did not manufacture Uni-Mat in Illinois, nor did it directly sell, ship, or transport Uni-Mat to Illinois. *Id.* ¶¶ 7, 11.

Tile Unlimited contends that Interplast has sufficient contacts with Illinois because it knew its products, both Uni-Mat and Iso-Drain, were being sold "nationwide." R. 253 at 6. But as discussed earlier, a company's knowledge that its products are sold throughout the United States is not the minimum-contacts standard. *See Walden*, 134 S. Ct. at 1121; *J. McIntyre Mach.*, 131 S. Ct. at 2788 (Kennedy, J., plurality opinion). Nor is the fact Interplast did not limit where the Uni-Mat could be sold in the United States, R. 253-3 at 65:21-25, sufficient to demonstrate purposeful availment. *See J. McIntyre Mach.*, 131 S. Ct. at 2788 (Kennedy, J. plurality opinion); *id.* at 2793 (Breyer, J. concurring) (quoting 987 A.2d at 592). As noted earlier, there is a difference between targeting a forum State and indifference as to where a distributor ultimately sends it.

Nevertheless, in support of its contention that Interplast has sufficient minimum contacts with Illinois, Tile Unlimited first directs the Court to a 2006 Colorado lawsuit involving Uni-Mat. R. 253 at 6-8 (citing R. 255, R. 256, R. 257, R. 258). Arvada (a large flooring company), Blanke USA, and Interplast were all

parties to the lawsuit. R. 255 at C133. In that case, Arvada sued Blanke USA, and Blanke USA in turn countersued Interplast, who moved for dismissal based on a lack of personal jurisdiction. *Id.* at C210-C236. The judge denied Interplast's motion to dismiss, concluding that Blanke USA had made out a *prima facie* case of jurisdiction. *Id.* at C131; C210-236.

That case is distinguishable for a number of reasons. First, the case law involving what contacts are required for jurisdiction to attach has significantly developed since 2006. *See, e.g.*, *Walden*, 134 S. Ct. 1115; *J. McIntyre Mach.*, 131 S. Ct. 2780; *uBID, Inc.*, 623 F.3d 421. The state court in that case did not have the benefit of the recent U.S. Supreme Court cases addressing the issue, nor was it following Seventh Circuit precedent. *See* R. 255 at C210-C236. In fact, the court acknowledged that the contacts at issue did not satisfy Justice O'Connor's "stream of commerce plus" test from *Asahi* and noted it was simply relying on Justice Brennan's "stream of commerce" test from *Asahi* and two other Colorado Supreme Court cases this Court is not required to consider. *Id.* at C229, C233. Moreover, the Court is tasked here with focusing on what contacts Interplast has *with Illinois*, not its connections to Colorado. The documents provided from the 2006 Colorado suit mention an exclusivity agreement entered into by Interplast and Blanke Germany on July 8, 2003, in which Blanke Germany agreed to market and sell Uni-Mat in the United States, its territories, and Canada. R. 258 at C27, C58; R. 255 atC168-C169. In making its minimum contacts determination, the Colorado court explicitly noted the exclusivity agreement's "special price" for the product in "Denver." *Id.* at

C231. This demonstrated Interplast had a special interest in Uni-Mat sales in Colorado. Tile Unlimited has not directed the Court in this case to any such document or provision relating to Illinois. Therefore, the Court finds the 2006 lawsuit and its corresponding documents inapposite to the analysis here.

The other information Tile Unlimited highlights to demonstrate Interplast has sufficient contacts with Illinois is equally unavailing. Tile Unlimited argues that the lists exemplifying the revenue from sales and the number of transactions involving Uni-Mat in Illinois and throughout the United States, *see* R. 253-7, demonstrate Interplast purposefully availed itself of the benefits of doing business in Illinois. But for the reasons previously explained, this argument fails. *See* § I.

Tile Unlimited directs the Court to at least two other foreign distributors of Interplast products that distributed a different version of Uni-Mat in the United States. R. 253 at 4-5. This information is unhelpful because it does not show any connection between Interplast and Illinois, nor does it even relate to the product at issue here—i.e., the blue Uni-Mat sold under the Blanke name. Relatedly, Tile Unlimited contends that Superseal Construction Products ("Superseal")[9] has a website that confirms Superseal sells Interplast's products nationally, including at Menards (which allegedly has thirty-three stores in Illinois) and through the Menards website. R. 253 at 5. Like the situation with Blanke Germany and Virginia Tile's website, however, this information (1) is from January 2014; (2) is from a

---

[9] According to its website, Superseal "manufactures, markets[,] and distributes air gap membrane products through out [sic] North America." *Superseal*, www.superseal.ca/Company.html (last visited June 4, 2014).

third party's website; (3) and does not relate to the product at issue here or do anything more than prove Interplast's other distributors sent a different product to Illinois. It does not reveal any sort of purposeful availment on the part of Interplast to serve Illinois.

Tile Unlimited, referring to documents from the 2006 Colorado lawsuit, says that Interplast at some point had an English-language website that claimed, "With customers in over 42 countries and 70% export business, INTERPLAST is constantly strengthening their international market position." R. 258 at C36 ¶ 5; C38. This general statement about Interplast as a company is not enough for the website to be the basis for sufficient minimum contacts. *See Advanced Tactical Ordnance Sys.,* 2014 WL 1849269, at *6; *be2LLC,* 642 F.3d at 559; *uBID, Inc.,* 623 F.3d at 428-29. The same goes for Virginia Tile's contention that Interplast's website featured Uni-Mat from 2005 to 2011. *See* R. 246 at 6 (citing R. 246-4 at 92:1-22). Advertisements on an international website that are visible across the world by internet users, especially without any specific targeting of the forum State, are insufficient to satisfy the contacts required for personal jurisdiction. *See Advanced Tactical Ordnance Sys.,* 2014 WL 1849269, at *6

Furthermore, Tile Unlimited calls attention to the fact that Hartl, Interplast's Managing Director, attended a trade show in Florida in 2004 and another in Illinois in 2012. R. 253 at 5; *see* R. 253-3 at 66:2-67:6; 80:22-81:24. These facts are also unhelpful because neither trade show involved the type of product at issue here, *see* R. 253-3 at 66:5-9; 67:7-17; 81:4-24; attending a trade show in

Florida is not a contact with Illinois, *see Renner*, 2010 WL 3906242, at *10; and Hartl's attendance at the trade show in 2012 has no relation to Interplast's' contacts with Illinois at the time of this suit (2010) or the time of its alleged improper conduct (sometime prior to 2009), *see Robinson*, 2014 U.S. Dist. LEXIS, at *32. And as was outcome determinative above as to Blanke Germany, it could hardly be said that the injury at issue here "arose out of" contacts that were either years after the fact or not in Illinois. *See* § I; *Helicopteros Nacionales de Colombia*, 466 U.S. at 414. The same analysis and conclusion can be applied to the fact Interplast had a sales representative in California from 2003 to 2005. *See* R. 253-3 at 112:10-113:19.

Virginia Tile, in an effort to demonstrate Interplast has sufficient contacts with Illinois, describes a 2011 state court suit in Georgia (Case No. 11CV-12978-8) that involved Uni-Mat. *See* R. 246 at 6. Virginia Tile highlights Blanke USA's third-party complaint against Interplast in which Blanke USA alleged the following: (1) Interplast has set up channels of sales, promotion, and distribution for the purpose of selling products in the United States and Georgia; (2) Interplast is aware of the distribution system that moved Uni-Mat into the United States for that purpose; (3) Interplast designed or modified Uni-Mat for sales in the United States and Georgia; and (4) Interplast marketed Uni-Mat through Blanke, a distributor, who agreed to be its sales agent in the United States. *See* R. 246 at 6 (citing R. 246-5 ¶¶ 4-7). However, Virginia Tile has failed to direct the Court to authority that allows for unsubstantiated allegations in a lawsuit to be the basis for minimum contacts sufficient to establish personal jurisdiction in an unrelated suit in a completely

separate forum. Also, even taking all the allegations as true, they still would not show any purposeful availment on the part of Interplast to serve *Illinois*, as opposed to Georgia or the United States as a whole. Nothing about those allegations evinces a connection to Illinois or an intent to specifically reach the Illinois market.

Taking all the information together, Tile Unlimited has not established that Interplast purposely availed itself of the privilege of conducting activities in Illinois, the first prong of the test for personal jurisdiction, under any of the standards arising from the relevant case law. *See e.g.*, *J. McIntyre Mach.*, 131 S. Ct. at 2780; *Asahi*, 480 U.S. at 102. The Court may not exercise personal jurisdiction over Interplast.

## CONCLUSION

For the reasons discussed, the Court declines to exercise personal jurisdiction over Blanke Germany and Interplast. Their motions to dismiss for lack of personal jurisdiction, R. 228; R. 231, are granted. Blanke Germany and Interplast are dismissed from the case. The remaining parties are directed to appear at the status hearing on June 11, 2014, at 9:00 a.m. to discuss a schedule so that this 2010 case can move forward.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: June 9, 2014